Federal Deposit Insurance Corporation, demandante y recurrida, *v.* Municipio de San Juan, demandada y recurrente.

*Número:* RE-88-70 *Resuelto:* 28 de octubre de 1993

388

*José A. Menéndez Cortada*, de *Martínez Álvarez, Fernández Paoli, Menéndez Monroig, Menéndez Cortada & Lefranc Romero*, abogado del recurrente; *Vionette Benítez Quiñones*, de *Trías, Doval, Muñoz, Acevedo & Otero*, abogada de la recurrida.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

## I

El recurso ante nuestra consideración plantea la interrogante de si bajo las disposiciones de la Ley de Patentes Municipales, Ley Núm. 113 de 10 de julio de 1974, según enmendada,[1] 21 L.P.R.A. sec. 651 *et seq.*, el recurrente Municipio de San Juan (en adelante el Municipio) está obligado a devolver parte de las patentes municipales pagadas por un contribuyente, por haber cerrado éste sus operaciones antes de que terminara el período para el cual se pagaron dichas patentes. Por la naturaleza novel y la importancia del asunto, decidimos revisar.

## II

El 25 de junio de 1984 Girod Trust Company realizó un pago por concepto de patentes municipales por la cantidad de $110,891.37 al Municipio correspondiente al primer semestre del Año Fiscal 1984–1985, equivalente al período de 1ro de julio a 31 de diciembre de 1984.

El 16 de agosto de 1984 Girod Trust Company cerró sus operaciones y la Federal Deposit Insurance Corp. (en adelante F.D.I.C.) advino dueña de los activos de la extinta institución bancaria, que no habían sido vendidos a otros bancos.

---

[1] Recientemente esta ley fue extensamente enmendada por la Ley Núm. 82 de 30 de agosto de 1991 (21 L.P.R.A. secs. 651a, 651c–651d, 651f, 651h–651j, 651m, 652x) y por la Ley Núm. 93 de 17 de noviembre de 1992 (21 L.P.R.A. secs. 651a–651b, 651f, 651h–651q, 651s *et seq.*).

La F.D.I.C. le solicitó al Municipio el reembolso de la suma de $73,927.57, la cual, alegadamente, era la parte de la patente municipal ya pagada que correspondía al tiempo del primer semestre del Año Fiscal 1984–1985, en que Girod Trust Company dejó de operar.

El Municipio denegó la solicitud de reintegro referida por entender que ello no procedía en derecho.

Con el propósito de impugnar esa determinación, el 2 de octubre de 1987 la F.D.I.C. instó una acción contra el Municipio en el Tribunal Superior, Sala de San Juan para reclamar el reintegro de la porción aludida de la patente municipal pagada, más intereses legales.

El 23 de noviembre de 1987 el Municipio radicó una moción de sentencia sumaria la cual fue opuesta por la demandante. El 20 de enero de 1988 el Tribunal a quo, luego de celebrarse la vista correspondiente, dictó sentencia a favor de la F.D.I.C. declarando con lugar la petición de reintegro, más el pago correspondiente de los intereses legales.

Inconforme con la determinación del foro de instancia, el Municipio pidió reconsideración de la sentencia emitida, la cual fue declarada no ha lugar. De dicha determinación acude ante nos señalando como único error el siguiente:

ERRÓ EL HONORABLE TRIBUNAL SUPERIOR EN RE-SOLVER QUE UN MUNICIPIO TIENE QUE REINTE-GRARLE A UN CONTRIBUYENTE LA PARTE PROPORCIO-NAL DEL PAGO DE PATENTE MUNICIPAL DE UN SEMESTRE PORQUE CESÓ OPERACIONES ANTES DE COMPLETARSE EL SEMESTRE. Petición, pág. 2.

## III

Conforme con nuestro ordenamiento constitucional, la facultad para imponer contribuciones radica de forma exclusiva en la Rama Legislativa. Art. VI, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1. Esa autoridad contributiva es fundamental a la vida del Estado y por lo tanto el

poder fiscal gubernamental es constitucionalmente de naturaleza amplia y abarcadora. Véanse: *Coca-Cola Bottling Co. v. Srio. de Hacienda*, 112 D.P.R. 707 (1982); *U.S. Brewers Assoc. v. Srio. de Hacienda*, 109 D.P.R. 456 (1980); *R.C.A. v. Gobierno de la Capital*, 91 D.P.R. 416 (1964); *Miranda v. Sec. de Hacienda*, 77 D.P.R. 171 (1954).

Nuestra Constitución también le confiere al poder legislativo la autoridad para "crear, suprimir, consolidar y reorganizar municipios, modificar sus límites territoriales y determinar lo relativo a su régimen y función ...". Art. VI, Sec. 1, Const. E.L.A., *supra*, pág. 362. Véase, además, *Colón v. Municipio de Guayama*, 114 D.P.R. 193, 198 (1983). Aunque los municipios no tienen facultad propia para imponer contribuciones,[2] al amparo de los poderes antes citados la Asamblea Legislativa —mediante mandato claro y expreso— puede delegar en éstos la autoridad para imponer y cobrar contribuciones, derechos, arbitrios e impuestos razonables dentro de sus límites territoriales y sobre materias no incompatibles con la tributación impuesta por el Estado. *American Express Co. v. Mun. de San Juan*, 120 D.P.R. 339, 345 (1988). Uno de los tributos cuya imposición se ha delegado a los municipios para generar ingresos es la patente municipal[3] o contribución sobre el volumen del negocio[4]. La Asamblea Legislativa ha autori-

---

[2] "Municipal corporations have no inherent power of taxation. On the contrary, municipal corporations possess with respect to taxation only such power as has been granted to them by the constitution or the statutes." E. McQuillin, *The Law of Municipal Corporations*, 3ra ed., Illinois, Callaghan and Company, 1986, Vol. 16, Sec. 44.05.

[3] La Sec. 2 de la Ley Núm. 93 de 17 de noviembre de 1992 (21 L.P.R.A. sec. 651b), ha definido "Patente" como una contribución impuesta y cobrada por el municipio a toda persona dedicada con fines de lucro a la prestación de cualquier servicio, la venta de cualquier bien a cualquier negocio financiero o negocio en los municipios de Puerto Rico.

También se define como: "Documento expedido por la hacienda pública", que acredita haber satisfecho determinada persona la cantidad que la ley exige para el ejercicio de algunas profesiones o industrias. Véase *Diccionario de la Lengua Española*, 21ra ed., Madrid, Ed. Espasa–Calpe, 1992, pág. 1097.

[4] Véase Ley de Patentes Municipales, Ley Núm. 113 de 10 de julio de 1974 (21 L.P.R.A. sec. 651 *et seq.*).

zado expresamente a los municipios del Estado Libre Asociado de Puerto Rico a imponer y cobrar patentes municipales a toda persona dedicada a "la prestación de cualquier servicio, o a la venta de cualquier bien, negocio financiero y/o cualquier industria o negocio ...". 21 L.P.R.A. sec. 651b. Por lo tanto, toda persona dedicada "con fines de lucro a la prestación de cualquier servicio, a la venta de cualquier bien, a cualquier negocio financiero o a cualquier industria o negocio" está sujeta a la imposición de este tributo. 21 L.P.R.A. sec. 651c.

■ En Puerto Rico, a diferencia de otras jurisdicciones, se favorece una interpretación amplia del poder tributario delegado de los municipios. La Asamblea Legislativa, al amparo del Art. VI, Sec. 1 de nuestra Constitución, *supra*, delegó esa autoridad fiscal con la intención clara de "ampliar el número de industrias o negocios con fines de lucro sujetos a tributación". *American Express Co. v. Municipio de San Juan*, supra, pág. 346. La ley responde a una filosofía que favorece la ampliación de los poderes de los municipios, de forma que éstos puedan proveer más servicios directos a la ciudadanía.

■ En *Molinos de P.R. v. Municipio de Guaynabo*, 105 D.P.R. 470, 474 (1976), resumimos la evolución del Derecho puertorriqueño sobre las patentes municipales:

> Durante los últimos años ha habido una corriente de pensamiento, no exclusiva desde luego, que favorece la ampliación de la facultad impositiva de los municipios.... De ahí surge esta tendencia que favorece la ampliación de las facultades impositivas de los municipios. Naturalmente, este es un problema complejo de política pública lleno de concomitancias y corresponde a la Asamblea Legislativa y no al Poder Judicial tomar las decisiones que estime pertinentes. Sin embargo, como dijimos en *Texas Co. (P.R.) v. Municipio*, 81 D.P.R. 499, 509 (1959), no estamos justificados en adoptar normas restrictivas "en contra del poder contributivo de los municipios, a la luz de las claras e inequívocas expresiones que de tiempo en tiempo ha venido haciendo la Asamblea Legislativa con el fin de fortalecer, antes de debilitar, la facultad contributiva de los gobiernos

municipales concedida en la Ley de Patentes." Cuando hay autoridad de ley para ello y excepto en casos inherentemente sospechosos no estamos inclinados a intervenir con la regulación económica municipal, pues como hemos señalado, esta es una función primordialmente legislativa, *City of New Orleans* v. *Dukes*, 49 L.Ed.2d 511 (1976). (Escolio omitido.)

En *Arecibo Bldg. Corp. v. Mun. de Arecibo*, 115 D.P.R. 76, 78 (1984), reafirmamos lo expresado en *Molinos de P.R. v. Municipio de Guaynabo*, supra, y añadimos que:

La Sec. 3 de la Ley de Patentes de 1974 (21 L.P.R.A. sec. 651b) autoriza a las Asambleas Municipales de todos los municipios a imponer y a cobrar patentes "a toda persona dedicada a la prestación de cualquier servicio, o a la venta de cualquier bien, negocio financiero y/o cualquier industria o negocio...". Del texto de la ley se desprende que la autoridad concedida a los municipios es *amplia*. La utilización de las palabras "toda persona", "cualquier servicio", "cualquier industria o negocio" no permiten que se le dé una interpretación restrictiva .... (Énfasis suplido.)

A la luz de los principios antes reseñados, la cuestión ante nos se reduce esencialmente a determinar cuál es precisamente el mandato legislativo en cuanto si procede o no el reintegro solicitado.

## IV

El Municipio plantea que es erróneo interpretar la Ley de Patentes Municipales en el sentido de requerir a un municipio devolver la parte proporcional del pago semestral a un contribuyente que pagó su patente y luego cesa operaciones durante dicho semestre. *Alega que la patente se paga por el semestre completo y no por días de operación*, y que la sentencia del tribunal de instancia afecta el funcionamiento fiscal de todos los municipios.

La F.D.I.C. alega, por su parte, que al interpretar el estatuto como un todo surge que la patente se impone por la operación o por llevar a cabo una industria. Sostiene que, como entidad federal, la ley le exime del pago de pa-

tentes a la operación de un negocio o industria del Gobierno federal y, además, provee no solamente para el prorrateo de patentes en consideración al tiempo de operaciones del negocio, sino también por territorio, cuando la actividad se desarrolla en más de un municipio. 21 L.P.R.A. sec. 651c y 651f. Señala que interpretar lo contrario significaría un enriquecimiento injusto por parte del municipio.

Un examen minucioso de la Ley de Patentes Municipales requiere concluir que no procede el reintegro solicitado por el demandante. El legislador claramente anticipó la situación ante nos y dispuso cómo ésta habría de atenderse.

La Sec. 11 de la Ley de Patentes Municipales vigente cuando ocurrieron los hechos de este caso, 21 L.P.R.A. sec. 651j, disponía lo siguiente:

Sec. *651j. Pago de la patente*[5]

Toda persona sujeta al pago de la patente que imponen las secs. 651 *et seq.* de este título pagará a los tesoreros de los municipios en que radiquen sus negocios o industrias, la patente que autorizan imponer dichas secciones. Dicha patente se pagará por anticipado dentro de los primeros quince (15) días *de cada semestre de año económico,* tomando como base el volumen de negocios efectuado durante el año inmediatamente anterior, según se dispone en la sec. 651f de este título, excepto en casos de nuevas industrias o negocios que se pagará según lo dispone la sec. 651l de este título. Disponiéndose, que cuando el pago total se efectúe al momento de radicar la planilla el día 15 de abril según lo dispuesto en la sec. 651i(1) de este título, se concederá un descuento de cinco (5) por ciento sobre el monto total de la patente a pagar. *No se cobrará patente alguna a negocio o industria en los semestres subsiguientes ·a aquél en que cesare de operar.* Las patentes vencerán *en plazos semestrales* el 1ro. de julio y 1ro. de enero de cada año .—Enmendada en Agosto 30, 1991, Núm. 82, art. 7. (Énfasis suplido.)

██ Como puede observarse, las patentes municipales

[5] Esta disposición fue algo enmendada por la Ley Núm. 82 de 30 de agosto de 1991.

claramente se imponen por *plazos semestrales*. Según lo expresa diáfanamente la referida Sec. 11, la patente se paga por *el semestre como un todo*, no teniendo ninguna consecuencia respecto a la obligación de hacer dicho pago el que se haya operado el negocio todo el semestre o sólo un día de éste. De ningún modo se establece como elemento determinativo del pago de la patente el criterio de "tiempo en que opera un negocio" o de "porción de un semestre", como alega la recurrida.

 Más aún, la propia Sec. 11 de la Ley de Patentes Municipales, *supra*, claramente excluye la posibilidad de que la obligación de pagar una patente cese el día que el negocio o industria cierre sus operaciones o de que haya que devolver la parte proporcional de la patente no utilizada durante el resto del semestre. Esta Sec. 11, *supra*, establece expresamente que cuando un negocio cesa operaciones su obligación de pagar la patente termina el semestre *subsiguiente* a aquel cuando cesó sus operaciones. No se establece la devolución de parte de la patente ya pagada, sino que se dispone solamente que la obligación contributiva cesará el próximo semestre. El esquema de la Ley de Patentes Municipales, pues, es claro. La contribución recae sobre un *plazo semestral*, como un todo, y si ocurre un cierre de operaciones durante ese plazo, el efecto es que la industria o negocio queda liberado del pago contributivo solamente a partir del semestre *subsiguiente* al cierre.

Debe notarse que este esquema encuentra su balance equitativo en el hecho de que cuando una industria o negocio sujeta al pago de patente comienza operaciones, el semestre *inicial* de actividad está exento de esta contribución. No se paga por el primer semestre de operaciones y la patente adviene vigente sólo para los semestres sucesivos. Véase Art. 8 de la Ley de Patentes Municipales, 21 L.P.R.A. sec. 6511. Por esta razón, no tiene sentido alguno la argumentación a favor del reintegro en cuestión

que se ha esgrimido sobre el fundamento de que la patente se haya pagado por adelantado.

 Por otro lado, a modo de comparación, también debe destacarse que la Asamblea Legislativa claramente señala —en la misma Ley de Patentes Municipales— la norma a regir en casos en los cuales un negocio o industria sujeto a patentes se somete a un procedimiento de quiebra o sindicatura, que son situaciones análogas o parecidas a la de Girod Trust Company. Dicha ley regula expresamente la tasación y el cobro de patentes en casos de quiebra, lo que presupone inexorablemente que en tales casos subsiste la obligación de pagar las patentes municipales. Dicho en palabras sencillas, que el legislador puertorriqueño no eximió a ningún negocio o industria de pagar las patentes municipales por el mero hecho de haberse sometido a un procedimiento de quiebra o sindicaturas. Véase 21 L.P.R.A. secs. 651q y 652a. Si en tales situaciones la intención legislativa supone el pago de la patente, ello apoya por analogía lo que hemos señalado sobre la situación ante nos.

 Debe notarse que el claro mandato legislativo en lo referente al pago de patentes, aún por el período en que un negocio se encuentra sometido a un procedimiento de quiebra o sindicatura, es cónsono con los principios generales y la práctica sobre patentes y quiebras que prevalece en el derecho norteamericano, que es la fuente de las disposiciones de Puerto Rico. El tratadista principal en esta materia, E. McQuillin, en su obra *The Law of Municipal Corporation*, 3ra ed., Illinois, Callaghan and Company, 1986, Vol. 16, Sec. 44.52, ha señalado con claridad que los procedimientos de quiebra no dejan sin efecto las patentes que propiamente le ha fijado un municipio a una empresa o negocio.[6] Más aún, éste comentarista ha señalado, ade-

---

[6] If authorized by statute, property in custodia legis is subject to municipal taxation. Pending bankruptcy proceedings, a bankrupt's property is taxable, and federal receivers conducting the business of a corporation are not exempt from the payment of taxes levied against them by municipal ordinance, although it has been

más, que las agencias federales que se encargan de conducir el negocio mientras dura la quiebra no están exentas de las patentes municipales que le hayan sido impuestas, *y así lo han confirmado varios tribunales federales. Palmer v. Webster & Atlas Bank*, 312 U.S. 156, 163 (1941);[7] *Swarts v. Hammer*, 194 U.S. 441, 444 (1904), en donde se expresa lo siguiente:

> Property in bankruptcy is subject to applicable state and local taxes absent a clear expression by Congress of an intent to create an exemption.
> ... property in hands of bankruptcy trustee not exempt from taxation.... Véanse, además: *Borock v. City of New York*, 268 F.2d 412 (2do Cir. 1959); *City of New Brunswick v. United States*, 276 U.S. 547 693 (1928); *The Southern Cross*, 120 F.2d 466, 467 (2do Cir. 1941).[8]

A la luz de lo que hemos señalado anteriormente, debemos concluir que, en derecho, es claro que la F.D.I.C. no tiene razón al reclamar la devolución que solicita de la patente en cuestión, no sólo porque no procede bajo el Derecho de Puerto Rico, sino porque al hacer una analogía con la situación de quiebra parecería que aún bajo las propias normas federales es improcedente.

## V

▪ Nuestra conclusión de que no procede el reembolso solicitado, fundamentada en un análisis de los términos de la Ley de Patentes Municipales más directamente

---

held that property held by the Small Business Administration, in lieu of foreclosure, is not subject to state or local taxation. McQuillin, *op. cit.*

(7) "What Congress intended was that a business in receivership or conducted under court order, should be subject to the same tax liability as the owner would have been if in possession and operating the enterprise." *Palmer v. Webster & Atlas Bank*, 312 U.S. 156, 163 (1941).

(8) "By virtue of federal statutes any receiver appointed by a court of the United States is subject to the same tax liability as the owner would have been had he continued is possession and operation of the enterprise". *The Southern Cross*, 120 F.2d 466, 467 (2do Cir. 1941).

pertinentes a la controversia ante nos,[9] también se apoya en otras consideraciones y principios jurídicos. En numerosas ocasiones hemos reiterado nuestro deber de interpretar las leyes y los estatutos de modo que prevalezcan sus propósitos legislativos esenciales. Estamos obligados a dilucidar el significado de una ley "tomando en consideración los fines que persigue y en forma tal que la interpretación se ajuste al fundamento racional o fin esencial de la ley y a la política pública que la inspira". *Esso Standard Oil v. A.P.P.R.*, 95 D.P.R. 772, 785 (1968). Véanse: *Chase Manhattan Bank v. Mun. de San Juan*, 126 D.P.R. 759 (1990); *A.R.P.E. v. Ozores Pérez*, 116 D.P.R. 816 (1986); *Passalacqua v. Mun. de San Juan*, 116 D.P.R. 618 (1985).

En el caso ante nos, el propósito del legislador al aprobar la Ley de Patentes Municipales fue proveer un mecanismo a los municipios para generar ingresos y fortalecerlos económicamente, para que cumplan sus funciones en beneficio y para el bienestar general de todos los habitantes de su jurisdicción.[10]

Las patentes municipales representan la segunda fuente de ingresos propios de los municipios de Puerto Rico y junto con los ingresos provenientes de las

---

[9] La Sec. 33 de la Ley de Patentes Municipales, 21 L.P.R.A. sec. 652e, establece un procedimiento de reintegro o crédito para casos donde un *plazo semestral* ha sido pagado en exceso. Dicha disposición no es realmente pertinente al caso ante nos. Nótese, en primer lugar, que se refiere a un *plazo pagado en exceso*. Presupone, pues, que el pago se hace por el plazo, o sea por el semestre, y no alude de modo alguno a porciones del semestre, como alega la recurrida. Más aún, por sus propios términos, esta sección dispone para el reintegro o crédito de un *pago en exceso del monto correcto del plazo semestral*. Se refiere evidentemente a casos donde se calculó equivocadamente el plazo semestral; es decir, alude a lo que eventualmente equivaldría a un sobrante, por haberse pagado más de lo correspondiente al semestre en cuestión, más de lo que realmente se adeudaba. Claramente, ésta no es la situación del caso de autos. Según el expediente del caso, el cálculo de Girod Trust Company para efectuar el pago de la patente fue el correcto. Pagó bien lo que le correspondía pagar. No hubo "exceso" que acreditar.

[10] Véase la Exposición de Motivos de la Ley Núm. 82, *supra*, 1991 (Parte 1) *Leyes de Puerto Rico* 676, que enmienda las secs. 2, 4, 5, 7, 9, 10, 11, 13 y 14, y la Sec. 52 de la Ley Núm. 113 de 10 de julio de 1974, según enmendada, conocida como Ley de Patentes Municipales.

contribuciones proveen al municipio el fundamento para formular su presupuesto de gastos. Éstas representan una fuente potencial para el crecimiento de los recursos económicos municipales, necesarios para mejorar los servicios que prestan a la ciudadanía, cuyo costo se ha incrementado sustancialmente durante los últimos años. Se estima que los ingresos por concepto de las patentes constituyen aproximadamente del 10% al 15% del presupuesto total de los municipios de Puerto Rico. Véase Exposición de Motivos de la Ley de Patentes Municipales, 1991 (Parte 1) Leyes de Puerto Rico 676.

De manera que si el propósito primordial de la Ley de Patentes Municipales es generar ingresos para el beneficio de la comunidad, entonces dicho estatuto debe ser interpretado de modo que se cumpla y se facilite, como lo hemos hecho aquí. Por otro lado, aquí también se aplica el principio elemental de Derecho Tributario de que las deducciones, los créditos y los reintegros, por ser gracias legislativas al contribuyente, se interpretan restrictivamente contra aquel que las invoque como también lo hemos hecho aquí. Véanse: *Central Igualdad, Inc. v. Srio. Hacienda*, 83 D.P.R. 45, 50 (1961), y *Descartes, Tes. v. Tribl. Contribuciones y Ortiz*, 73 D.P.R. 491, 497 (1952).

## VI

Finalmente, nos resta discutir si es válido el planteamiento de la recurrida de que como entidad federal la ley le exime del pago de patentes.

La F.D.I.C. es una agencia federal creada por el Congreso de Estados Unidos (12 U.S.C. secs. 1811, 1819(b)(1) (1989)), exenta de tributación por parte del estado (12 U.S.C. sec. 1825(b)(1)). Por lo tanto, como agencia federal no está sujeta a tributación municipal. Véase McQuillin, *op. cit.*, Vol. 5, Sec. 19.08. A estos efectos la Sec. 9

de la Ley de Patentes Municipales, 21 L.P.R.A. sec. 651h(1) dispone lo siguiente:

> Todo negocio o industria que se haga o se explote por y para cualquier agencia, subdivisión o instrumentalidad del Gobierno Federal o el Gobierno Estatal y sus municipios.

 Es claro que la ley, expresamente, exime del pago de patentes la operación de un negocio o industria que se haga o explote por el Gobierno federal. Así lo establecen las disposiciones antes citadas. Sin embargo, a pesar de que la F.D.I.C. está excluida como agencia federal del pago de patentes municipales, las circunstancias presentes en el caso de autos hacen inmaterial que se encuentre exenta, ya que no le correspondió a ésta el pago de la patente aludida sino a su predecesor Girod Trust Company. Al momento en que por ley había que pagar la patente, la F.D.I.C. no había tomado aún el lugar de Girod Trust Company. Como la patente en cuestión no se le impuso a F.D.I.C. su inmunidad no viene al caso.

Por los fundamentos expuestos, *se revoca la sentencia dictada por el Tribunal Superior, Sala de San Juan, el 20 de enero de 1988.*

El Juez Asociado Señor Negrón García disintió con opinión escrita, a la cual se unió el Juez Asociado Señor Rebollo López. El Juez Asociado Señor Alonso Alonso se inhibió.

**— O —**

Opinión disidente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Rebollo López.

I

El Tribunal resuelve hoy que bajo la Ley de Patentes Municipales de 1974, Ley Núm. 113 de 10 de julio de 1974

(21 L.P.R.A. sec. 651 *et seq.*), no hay derecho al reintegro de las cantidades pagadas de forma *anticipada*, si el contribuyente cesa operaciones antes de finalizar el período para el cual se prepagaron las patentes. *Ello vulnera la letra y el espíritu de la citada Ley Núm. 11 y convierte en confiscatorio su esquema.*

Una lectura de la Sec. 4 de la referida Ley de Patentes Municipales[1] refleja que la obligación de pagar la patente *está condicionada por el tiempo de operación*. Así, su Sec. 11[2] visualiza que se paguen *cada año económico* por *adelantado* en dos (2) plazos semestrales. Tanto el Municipio de San Juan (Municipio) como la mayoría incurren en el error de confundir *cuándo* ha de efectuarse el pago —cada semestre— con el *término* por el cual se le impone; esto es, un (1) año o período menor operacional.

Es de notar que la cantidad *a ser pagada por anticipado se calcula* "sobre la base del volumen de los negocios efectuados durante el año inmediatamente anterior". Se impone, pues, la obligación contributiva sobre el volumen de negocios efectuados durante el período actual y éste es estimado a base del año anterior. Es obvio que la mayoría le atribuye a esta mecánica cuantificativa un alcance que no

---

[1] Expone:

"Estará sujeta al pago de una patente toda persona dedicada con fines de lucro a la prestación de cualquier servicio, a la venta de cualquier bien, a cualquier negocio financiero o a cualquier industria o negocio en los municipios del Estado Libre Asociado de Puerto Rico, excepto lo que en otro sentido disponen las secs. 651 a 652y de este título, durante cada año económico o *parte proporcional del mismo*." (Énfasis suplido.) 21 L.P.R.A. sec. 651c (Sup.1983).

[2] "Toda persona sujeta al pago de la patente que imponen las secs. 651 a 652y de este título pagará a los tesoreros de los municipios en que se radiquen sus negocios o industrias, la patente que autoriza imponer las secs. 651 a 652y de este título, dicha patente se pagará por anticipado dentro de los primeros 15 días de cada semestre del año económico, sobre la base del volumen de los negocios efectuados durante el año inmediatamente anterior según se dispone en la sec. 651f de este título, excepto en casos de nuevas industrias o negocios según lo dispone esta ley en la sec. 651e de este título. Disponiéndose que cuando el pago se efectúe dentro de los veinte (20) días que preceden al vencimiento de las patentes, se concederá un descuento del cinco (5) por ciento. No se cobrará contribución alguna a ningún negocio o industria en cualquier semestre, subsiguiente a aquel en que cesare. Las patentes vencerán en plazos semestrales el 1ro. de julio y 1ro. de enero de cada año." 21 L.P.R.A. sec. 652j.

tiene. La visión legislativa es evidente: al hacerse el estimado sobre la base del volumen del año anterior, simplemente el legislador *presume* que dicho negocio se conducirá, durante un período de tiempo similar, igual al anterior. Naturalmente, si el contribuyente cesa sus operaciones antes de concluir el período para el cual pagó las patentes *por adelantado*, es menester examinar *el volumen de venta real*, pues la presunción legislativa es que se producirá una disminución correspondiente en el volumen de negocio.

## II

La Ley de Patentes Municipales provee, en cualesquiera casos de pagos en exceso, que se acrediten o reintegren al contribuyente. La interpretación del Municipio, de la cual se hace eco la mayoría, hace inoperante la disposición relativa a los reintegros.

El lenguaje utilizado por el Legislador al reconocer el derecho a reintegro o crédito de todo contribuyente que realizó un pago de más no genera dudas ni es susceptible de entenderse como discrecional; *es mandatorio*. Así lo dispone la Sec. 34 de la Ley de Patentes Municipales, 21 L.P.R.A. sec. 652f(a)(1), relativa a "[c]uando se haya hecho un pago *en exceso* de cualquier patente impuesta por autorización de las secs. 651 a 651y de este título, el monto de dicho pago se acreditará contra cualquier patente sobre volumen de negocio o plazo de la misma entonces exigible a la persona, y cualquier remanente se reintegrará *inmediatamente* a la persona". (Énfasis suplido.)

Frente a este mandato, no podemos decir que el derecho a reintegro no cobija la situación de autos y limitarlo a aquéllos, resultantes de haberse pagado una cantidad mayor a la que realmente se adeuda. *Ese enfoque desvirtúa el concepto de pago adelantado*. ¿Puede seriamente afirmarse

que satisfacer una cantidad mayor a la adeudada no goza de igual naturaleza que el prepago de una contribución que se impone a base del tiempo de operación cuando se cesa operaciones antes de que transcurra el semestre? Ciertamente no existe diferencia sustancial.

Finalmente, es irrelevante la referencia a nuestra jurisprudencia que reconoce a los municipios un amplio poder en materia tributaria. Ello no se cuestiona. Este caso no encierra el poder impositivo del municipio, sino el derecho a reintegro concedido en la ley al contribuyente.