# 2006 DTA 97

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL IV**

BANCO POPULAR DE PUERTO RICO
Apelante

v.

MUNICIPIO DE MAYAGÜEZ
Apelado

Núm. KLAN-2004-00689

San Juan, Puerto Rico, a 10 de julio de 2006

Panel integrado por su Presidente, el Juez Ortiz Carrión,
y los Jueces Rivera Román y Piñero González

Piñero González, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Banco Popular de Puerto Rico nos solicita que revoquemos la sentencia sumaria mediante la cual el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante TPI), le declaró sin lugar la demanda de impugnación de la notificación final de deficiencia en el pago de patente municipal determinada por el Municipio de Mayagüez, (en adelante el Municipio) exceptuando su reclamación en torno a los bonos emitidos por la Autoridad para el Financiamiento de Proyectos en la Cuenca del Caribe.

En su escrito de apelación, el Banco Popular de Puerto Rico (en adelante Banco) plantea que el foro de instancia erró al determinar que ciertas partidas alegadamente correspondientes a intereses recibidos sobre obligaciones del Gobierno de Puerto Rico y del Gobierno de Estados Unidos no estaban exentas del pago de patentes municipales; al resolver que los ingresos generados por el Banco en sus sucursales fuera de Puerto Rico deben incluirse como parte del volumen de negocio en el Municipio; y al denegarle la concesión de un crédito por el alegado pago de contribuciones similares a las patentes cobrado en las jurisdicciones correspondientes.

Por los fundamentos que expondremos a continuación, revocamos la sentencia apelada.

### I

Examinemos los hechos que dan lugar a la presente controversia, según surgen de los documentos incluidos por el Banco en su apéndice al escrito de apelación, y según fueron determinados por el TPI en la sentencia apelada.

Al momento en que surge la presente controversia, el Banco era una corporación bancaria organizada bajo las leyes del Estado Libre Asociado de Puerto Rico dedicada a hacer negocios en y fuera de Puerto Rico. Durante los años contributivos 1992-1993, 1993-1994, 1994-1995 y 1995-1996, el Banco tenía sucursales en las siguientes jurisdicciones fuera de Puerto Rico: Los Ángeles, California; Chicago, Illinois; Nueva York, NY; St. Thomas, Islas Vírgenes, USA; y Tortola, e Islas Vírgenes Británicas. Aun cuando en los expresados años contributivos el Banco era una corporación dedicada a hacer negocios financieros en y fuera de Puerto Rico, a sus sucursales

localizadas fuera del país se les reconocía gran autonomía operacional y administrativa en cuanto al manejo de sus asuntos.

Mediante carta del 20 de octubre de 1995, el Municipio le notificó al Banco una deficiencia en el pago de patentes municipales ascendente a $457,383.00 y correspondiente a los años 1992-1993, 1993-1994, 1994-1995 y 1995-1996. El 31 de octubre de 1995, el Banco contestó esa carta oponiéndose a la referida notificación preliminar de deficiencia y solicitando reconsideración y vista administrativa. El 17 de abril de 1996, el Municipio señaló para el 17 de mayo de 1996 la celebración de la vista administrativa solicitada.

En la fecha señalada, el Banco compareció a la vista en la cual estaban presentes el Director de Finanzas del Municipio, el Subdirector de Finanzas del Municipio, la Tesorera Municipal y los asesores contables Efraín Colón & Asociados. El 31 de enero de 1997 se celebró la continuación de esa vista en la cual el Banco expuso que debido a que la notificación preliminar de deficiencia no indicaba detalladamente las razones para su expedición, necesitaban que el Municipio les explicara los fundamentos para tal determinación.

Mediante carta del 13 de febrero de 1997 suscrita por el asesor, señor Efraín Colón, el Municipio le explicó al Banco que la notificación preliminar de deficiencia era producto de habérsele negado el tratamiento de ingresos exentos del pago de patentes municipales a la totalidad de los ingresos reportados como tales por el Banco en sus declaraciones de volumen de negocio para los años contributivos en controversia.

El 14 de marzo de 1997, el Municipio emitió la notificación final de deficiencia, en la cual indicó que no había base legal alguna para eliminar en su totalidad la deficiencia preliminar notificada al Banco. La deficiencia fue reducida a la cantidad de $190,293.00, sin más explicación que un anejo titulado "*Análisis de la Responsabilidad Contributiva del Banco Popular de Puerto Rico para los años 1992-93,1993-94, 1994-95 y 1995-96*".

El 10 de abril de 1997, el Banco presentó la demanda de epígrafe para impugnar la notificación final de deficiencia expedida por el Municipio, alegando en síntesis que la referida deficiencia era contraria a la Ley de Patentes Municipales y que se le había violado su derecho a un debido proceso de ley porque el Municipio había permitido que sus asesores privados participaran en el proceso de evaluación de las declaraciones del volumen de negocio del Banco.

El 9 de septiembre de 1997, el Municipio presentó su contestación a la demanda en la que negó las alegaciones principales del Banco. Alegó, como defensa afirmativa, que había actuado conforme a derecho cumpliendo con el debido proceso de ley sustantivo y procesal, y que la tasación de la deficiencia se hizo de acuerdo a la Ley de Patentes Municipales.

El 25 de agosto de 1998, el Banco solicitó que se dictara sentencia sumariamente, a lo que el Municipio se opuso alegando que el Banco no había establecido en forma clara y con evidencia directa los ingresos reclamados como exentos. Luego de evaluar los documentos de solicitud y oposición a la sentencia sumaria, más sus respectivas réplicas y dúplicas, el TPI celebró una vista argumentativa el 1 de julio de 1999.

En esa vista argumentativa se discutió la solicitud de sentencia sumaria presentada por el Banco, y el TPI le requirió a las partes que presentaran escritos suplementarios sobre la procedencia o no de cada una de las partidas reclamadas por el Banco como exentas del pago de patentes municipales. Ambas partes cumplieron con lo ordenado por el TPI: el 19 de octubre de 1999, el Banco presentó su escrito, y el 15 de marzo de 2000, el Municipio hizo lo propio.

Considerados los antedichos documentos y contando solamente con el beneficio de una vista argumentativa, el tribunal apelado concluyó que en el caso de epígrafe no existía controversia real sustancial en cuanto a los

hechos narrados en la sentencia apelada. Conforme a ello, dictó sentencia sumaria reconociendo únicamente como exento del pago de patentes municipales el ingreso proveniente de los bonos emitidos por la Autoridad para el Financiamiento de Proyectos en la Cuenca del Caribe, y desestimando las demás reclamaciones sobre partidas específicas, incluida la relacionada con los ingresos provenientes de las sucursales fuera de Puerto Rico.

## II

A los fines de resolver el recurso ante nos, conviene delimitar el trasfondo normativo aplicable a la controversia suscitada.

## A

Es harto conocido que existe una clara política pública judicial que promueve que los pleitos se ventilen en sus méritos. *Global Gas v. Salaam Realty*, **2005 J.T.S. 48**; *Dátiz Vélez v. Hospital Episcopal San Lucas*, **2004 J.T.S. 159**. No obstante, un tribunal puede dictar sentencia sumariamente a favor del promovente cuando de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en adición a las declaraciones juradas, se demuestra que no existe controversia real sustancial sobre algún hecho material y como cuestión de derecho procede dictar sentencia. Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III.

El referido mecanismo procesal pretende disponer de forma efectiva y rápida de aquellos litigios que no ameritan la celebración de un juicio en su fondo. *E.L.A. v. Cole Vázquez*, **2005 J.T.S. 55**; *Management Administration Services v. E.L.A.*, 152 D.P.R. 599, **2000 J.T.S. 189**. Por tratarse de un remedio extraordinario que puede privar a una parte de su día en corte, su aplicación depende de la sana discreción del foro sentenciador. *Roig Com. Bank v. Rosario Cirino*, 126 D.P.R. 613 (1990). A su vez, debemos tener en cuenta que el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad. *Rivera y otros v. Bco. Popular*, 152 D.P.R. 140 (2000). El objetivo de aligerar la tramitación de un caso no puede derrotar el principio fundamental de todo proceso ante un tribunal: alcanzar una solución justa. *Cuadrado Lugo v. Santiago Rodríguez*, 126 D.P.R. 272 (1990); *Presiding Bishop C.J.C. of L.D.S. v. Purcell*, 117 D.P.R. 714 (1986).

Así pues, es evidente que sólo procederá dictar sentencia sumariamente cuando el promovente acredita y surja claramente que no existe una controversia esencial en relación con los hechos del litigio y el tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia y sólo resta la aplicación del derecho. *Management Administration Services v. E.L.A., supra*; *Rivera Rodríguez v. Dept. Hacienda*, 149 D.P.R. 141 (1999); *Corp. Presiding Bishop v. Purcell*, 117 D.P.R. 714 (1986); *Revlon v. Las Américas Trust Co.*, 135 D.P.R. 363 (1976).

Cualquier parte litigante en el pleito podrá presentar una moción basada o no en declaraciones juradas, para que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3; *Sánchez Montalvo v. Autoridad de los Puertos*, 153 D.P.R. 559 (2001); *HMCA v. Contralor*, 133 D.P.R. 945 (1993). Toda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a la misma. *Management Administration Services v. E.L.A., supra*. Como claramente puede apreciarse en la jurisprudencia y la reglamentación antes citada, el tribunal que tiene ante sí una moción de sentencia sumaria puede tomar conocimiento de los alegatos de las partes, los documentos que acompañan la moción y los documentos que obran en el expediente del tribunal.

Por el contrario, como norma general, no procede que se dicte sentencia sumariamente cuando existe una controversia de hechos genuina entre las partes, en casos complejos que envuelvan interés público o aquéllos que requieran de la adjudicación por credibilidad. *Sucn. Maldonado v. Sucn. Maldonado*, **2005 J.T.S. 172**; *Vera Morales v. Bravo Colón*, **2004 J.T.S. 40**. Nuestro Tribunal Supremo ha sido claro al establecer que:

"*No es aconsejable utilizar el mecanismo procesal de la sentencia sumaria en casos donde hay elementos*

*subjetivos de intención, propósitos mentales o negligencia, o cuando el factor credibilidad sea esencial, si no el decisivo, para llegar a la verdad, y donde un litigante depende en gran parte de lo que extraiga del contrario en el curso de un juicio vivo.*" *Soto v. Hotel Caribe Hilton*, 137 D.P.R. 194 (1994).

Asimismo, se reiteró dicha doctrina en *Rosario v. Nationwide Mutual*, **2003 J.T.S. 34**, al establecer que cuando es necesario hacer determinaciones sobre elementos subjetivos, no existe la claridad fáctica necesaria para privar al promovido de su día en corte.

A tenor de lo anterior, un Tribunal no deberá dictar sentencia sumaria cuando: (1) existen hechos materiales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; o (4) como cuestión de derecho no procede. *Sucn. Maldonado v. Sucn. Maldonado, supra*; *González Rivera v. Multiventas y Servicios*, **2005 J.T.S. 154**; *Cuadrado Lugo v. Santiago Rodríguez, supra*; *Corp. Presiding Bishop v. Purcell, supra*.

Por otro lado, para derrotar una moción de sentencia sumaria, la parte promovida opositora deberá presentar contradeclaraciones juradas y contra documentos que pongan en controversia los hechos materiales y esenciales presentados por el promovente. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881 (1994); *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 D.P.R. 115 (1992). Si se cruza de brazos corre el riesgo de que le dicten sentencia en su contra sin la declaración del juicio en su fondo. *Flores v. Municipio de Caguas*, 114 D.P.R. 521 (1983). No obstante, el sólo hecho de no presentar evidencia que controvierta la presentada por la parte promovente, no implica que necesariamente proceda la sentencia sumaria. *PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra.*

Sólo cuando de los documentos no controvertidos que se acompañan surge que no existe una legítima disputa de hecho a ser dirimida, que sólo resta aplicar el derecho, y que no se ponen en peligro los intereses de las partes, se dictará sentencia sin necesidad de que se celebre una vista en los méritos. *Audiovisual Lang. v. Sist. Est. Natal Hermanos,* 144 D.P.R. 563 (1997).

Así, también, el desarrollo jurisprudencial en Puerto Rico ha establecido que el foro apelativo debe utilizar los mismos criterios que el TPI para evaluar si procede una sentencia sumaria. Recientemente nuestro Tribunal Supremo expresó que al revisar la determinación de primera instancia, el foro apelativo sólo puede considerar los documentos que se presentaron ante el foro de primera instancia. Asimismo, sólo le corresponde determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Vera Morales v. Bravo Colón, supra.*

**B**

La Asamblea Legislativa, en virtud de la aprobación de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4001 y ss., según enmendada, autorizó a todos los municipios del Estado Libre Asociado de Puerto Rico a imponer y cobrar patentes municipales dentro de sus límites territoriales. Por su parte, la Ley de Patentes Municipales, 21 L.P.R.A. secs. 651-652, según enmendada, expone la forma en que cada municipio llevará a cabo esta autoridad fiscal que la Asamblea Legislativa le delegó con la clara intención de aumentar el número de industrias o negocios con fines de lucro sujetos a tributación y a su vez ampliar los poderes de los municipios de forma que éstos puedan proveer más servicios directos a la ciudadanía. *Café Rico, Inc. v. Mun. de Mayagüez*, **2001 J.T.S. 152**; *Lever Bros. Export Corp. v. Alcalde S.J.*, 140 D.P.R. 152 (1996); *F.D.I.C. v. Mun. de San Juan*, 134 D.P.R. 385 (1993); *American Express Co. v. Mun. de San Juan*, 120 D.P.R. 339, 346 (1988).

La Ley de Patentes Municipales, en su Art. 2, 21 L.P.R.A. § 651b, autoriza a las asambleas municipales a imponer y cobrar, de acuerdo con las disposiciones de las secs. 651 a 652 de ese título, a toda persona dedicada a la prestación de cualquier servicio, o a la venta de cualquier bien, negocio financiero o cualquier industria o negocio, las patentes que se enumeran, a los tipos que en las secs. 651 a 652 de ese título se prescriben. El

propósito de la Ley de Patentes Municipales es facultar a cada municipio a imponer el impuesto de patentes sobre la operación específica que una industria o negocio lleva a cabo dentro de su jurisdicción. *Coca Cola v. Municipio de Aguadilla*, 99 D.P.R. 839 (1971).

La patente municipal, aunque adopta la forma de un permiso o licencia para el ejercicio de una actividad económica, realmente constituye un impuesto que va a variar de acuerdo al volumen de negocio de la empresa tributada. *American Express Co. v. Mun. de San Juan, supra; R.C.A. v. Gobierno de la Capital*, 91 D.P.R. 416 (1964).

Las patentes se impondrán de acuerdo al *principio de prorrateo*, sobre el cual está cimentada la Ley. Ese principio establece que cada municipio deberá recibir el pago correspondiente de patente municipal por aquella actividad económica que se materializa dentro de su jurisdicción geográfica, independientemente de si la misma devenga o contabiliza finalmente por una casa u oficina en otra municipalidad. *Firstbank de P.R. v. Mun. de Aguadilla*, 153 D.P.R. 198 (2001); *Lever. Bros. Export Corp. v. Alcalde S.J.*, 140 D.P.R. a la pág. 158.

Con respecto a lo anterior, la Ley dispone, específicamente, que en los casos que las operaciones de un negocio sean llevadas a cabo en dos (2) o más municipios, el cómputo de la patente se hará prorrateando el volumen de negocios tomando como base promedio el número de pies cuadrados de las áreas de los edificios utilizados en cada municipio durante el período contributivo del año natural anterior a la fecha de la radicación de la patente. 21 L.P.R.A. 651b.

La Ley de Patentes Municipales define el término volumen de negocios como los ingresos brutos que se reciban o se devenguen por la prestación de cualquier servicio, por la venta de cualquier bien, o por cualquier otra industria o negocio en el municipio donde la casa principal realiza sus operaciones, o los ingresos brutos que se reciban o se devenguen por la casa principal en el municipio donde ésta mantenga oficinas, almacenes, sucursales, planta de manufactura, envase, embotellado, procesamiento, elaboración, confección, ensamblaje, extracción, lugar de construcción, o cualquier otro tipo de organización, industria o negocio para realizar negocios a su nombre, sin tener en cuenta sus ganancias o beneficios. 21 L.P.R.A. sec. 651(o)(a)(2)(3)(9).

En el caso específico de los bancos comerciales, tales como el Banco aquí apelante, al momento de surgir esta controversia el ingreso bruto significa los intereses recibidos o devengados de préstamos, los cargos por servicios prestados, las rentas, el beneficio bruto en la venta de propiedades o valores y las ganancias, beneficios o **ingresos derivados de cualquier otra procedencia dentro y fuera de Puerto Rico atribuibles a la operación en Puerto Rico**. El ingreso bruto devengado por dichas organizaciones sujeto al pago de patentes se distribuirá entre las sucursales de acuerdo con la proporción que guarden todas las clases de depósitos de la sucursal con los depósitos totales de la organización en Puerto Rico 21 L.P.R.A, sec. 651a(B)(iv). (Énfasis suplido).

Como hemos visto, las patentes municipales autorizadas por la Ley de Patentes Municipales responden a la premisa de que los negocios sitos en su territorio se benefician de la organización local para efectuar sus actividades de interés pecuniario y, por tal razón, contribuyen al sostenimiento de las mismas. La determinación crucial es si un evento económico que genera dicho ingreso está dentro o fuera de la municipalidad. *Banco Popular v. Municipio de Mayagüez*, 120 D.P.R. 692, 700 (1988).

En su sección de 2 de la Ley de Patentes Municipales se definen los términos ingreso bruto y atribuibles a la operación de la siguiente manera:

*"Ingreso bruto- Significa la totalidad de los ingresos de fuentes dentro y fuera de Puerto Rico que sean atribuibles a la operación que se lleva a cabo en cada municipio, excluyendo todos los ingresos, tales como interés y dividendos provenientes de la inversión por un individuo de sus propios fondos, de la posesión de acciones corporativas u otros instrumentos de inversión.*

*Atribuibles a la operación- Significará la totalidad de los ingresos derivados dentro y fuera de Puerto Rico que reciba o devengue una persona relacionada con la explotación de una industria o negocio en Puerto Rico, tales como, pero no limitado a intereses sobre inversiones, pagarés u otras obligaciones excluyendo los intereses exentos según definido en la sec. 651h de este título, así como los dividendos o beneficios recibidos por dicha persona."*

En *Coca Cola Co. v. Municipio de Carolina*, 136 D.P.R. 216 (1994), se estableció que el factor determinante para la imposición del pago de patentes municipales sobre un volumen de negocios es que el ingreso se produzca como consecuencia de los negocios que la persona, natural o jurídica, desempeña en el municipio, lo cual implica que el ingreso no hubiese sido generado a no ser por las operaciones llevadas a cabo allí.

Para validar la tributación municipal, es necesaria la concurrencia de dos criterios. Primero, se exige que la empresa o negocio tenga un establecimiento comercial u oficina dedicada con fines de lucro a la prestación de cualquier servicio en el municipio correspondiente. Segundo, es necesario que se determine la base sobre la cual se impondrá la patente. Específicamente, la Ley señala que deberá hacerse sobre el volumen de negocios atribuible a la prestación de algún servicio, industria o negocio que se lleve a cabo en el municipio. *Lever Bros. Export Corp. v. Alcalde S.J., supra.*

Por otra parte, y pertinente a la controversia de autos, es menester destacar las disposiciones de la Ley de Patentes Municipales referentes a los casos en los cuales la industria o negocio impugne el monto o cómputo de las patentes a ser pagadas. Si estas organizaciones cuestionan la deficiencia que se alega en su contra por el Municipio, tienen que instar la demanda que requiere la sección 16(a)(1)(2) de la Ley dentro de los plazos allí dispuestos.

Como se mencionara anteriormente, el monto a pagar en patentes municipales se calcula a base del volumen del negocio. La Ley de Patentes Municipales provee un mecanismo para que las patentes sean autoimpuestas. Ello quiere decir que toda persona sujeta al pago de la patente o su agente autorizado estarán obligados a rendir al Director de Finanzas del municipio y bajo juramento, una declaración del volumen de su negocio incluyendo una determinación de a cuánto asciende la patente que debe pagar según el tipo correspondiente al volumen de negocio que haya tenido su industria. 21 L.P.R.A. sec. 651(i). Junto con la declaración, las personas sujetas al pago de patentes deberán pagar por adelantado las mismas. 21 L.P.R.A. sec. 651j.

El Director de Finanzas del Municipio evaluará las patentes declaradas y en caso que determine que existe una deficiencia con respecto a la patente impuesta, notificará a la persona dicha deficiencia por correo certificado y la persona podrá, dentro de los treinta días siguientes a la fecha del depósito en el correo de la notificación, solicitar reconsideración o pedir una vista administrativa en relación con la deficiencia señalada. Finalmente, el Director de Finanzas hará una determinación final y en caso de que la persona no esté conforme, podrá acudir ante el Tribunal de Primera Instancia y presentar demanda previa prestación de fianza a favor del Director de Finanzas. Las sentencias finales del Tribunal de Primera Instancias **dictadas en los méritos** de la deficiencia podrán ser apeladas al foro apelativo. 21 L.P.R.A. sec. 651o. (Énfasis suplido).

Según se desprende del esquema legislativo, una determinación de deficiencia en el pago de patentes está sujeta a una evaluación judicial **en sus méritos**. Se advierte, pues, que esa evaluación no constituye una revisión administrativa que se guíe por los parámetros dispuestos para las agencias administrativas, sino que al iniciarse el proceso con una demanda de impugnación, el TPI debe adjudicar en sus méritos la deficiencia determinada por el municipio correspondiente mediante un juicio *de novo*. 21 L.P.R.A. 651(o)(a).

### III

Es principio reconocido en el derecho procesal apelativo que en aras de impartir justicia un tribunal apelativo tiene la facultad inherente para considerar y resolver errores patentes que surjan de un recurso aun cuando los

mismos no hayan sido levantados por las partes. *Hernández v. Espinosa*, 145 D.P.R. (1998).

En el caso de autos, el Banco no señaló como error que el TPI dispusiera del mismo mediante sentencia sumaria. Sin embargo, este Tribunal considera que este caso no era susceptible de resolverse mediante el referido mecanismo procesal. El hecho de que, como regla general, debamos considerar solamente los errores que la parte apelante hubiera señalado en su alegato, no significa que estemos impedidos de considerar errores patentes que surjan de nuestro análisis de un expediente. En *Hernández v. Espinosa, supra*, nuestro Tribunal Supremo estableció que en aras de impartir justicia, el tribunal apelativo tendrá la facultad inherente para atender errores patentes que surjan de un recurso aun cuando no haya sido planteado por las partes. Así, aun cuando un tribunal apelativo *"únicamente está obligado a considerar los errores que la parte apelante o peticionaria hubiere señalado en su alegato, no significa que dicho foro esté impedido de considerarlos... si el error es patente y con ello evita un resultado injusto para la parte...".* Hiram Sánchez Martínez, *Práctica Jurídica de Puerto Rico: Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis Puerto Rico, 2001, pág. 297-298.

Es necesario subrayar que en el ejercicio de nuestra facultad revisora, además, estamos en igual posición que el foro de primera instancia en cuanto a evaluar la prueba documental ofrecida, así como las conclusiones de derecho. Consecuentemente, estamos facultados a adoptar nuestro propio criterio en la evaluación de ambos elementos.

Asimismo, en cuanto a los casos resueltos mediante sentencia sumaria en los tribunales de primera instancia, nuestro Tribunal Supremo ha expresado que al revisar tales determinaciones, este foro apelativo puede considerar los documentos que se presentaron ante el foro de primera instancia, y le corresponde determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Vera Morales v. Bravo Colón, supra*.

No podemos soslayar el principio doctrinario de que la emisión de una sentencia sumaria es un ejercicio extraordinario que sólo es procedente concederla cuando no existe controversia alguna sobre todos los hechos materiales del caso y sólo resta aplicar el derecho, situación que está ausente en el caso ante nos. Debemos tener en cuenta que el adecuado ejercicio de la discreción judicial está atado al concepto de la razonabilidad, y que el objetivo de aligerar la tramitación de un caso no puede derrotar el principio fundamental de todo proceso ante un tribunal: alcanzar una solución justa. *Cuadrado Lugo v. Santiago Rodríguez, supra*. Existe, además, una firme política judicial que milita a favor de que los casos se ventilen y adjudiquen en sus méritos. Por lo cual entendemos que bajo las circunstancias particulares del presente caso erró el TPI al disponer del mismo mediante sentencia sumaria. No procede que se dicte sentencia sumariamente cuando existe una controversia de hechos genuina entre las partes, en casos complejos que envuelvan interés público o aquéllos que requieran de la adjudicación por credibilidad, *Sucn. Maldonado v. Sucn. Maldonado, supra*, sino que la sentencia sumaria sólo debe dictarse en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes.

De los documentos que el Banco acompañó con su solicitud de sentencia sumaria y de la oposición del Municipio, surge que existe una legítima disputa de hecho a ser dirimida referente a la naturaleza de las partidas en controversia. El propio Municipio así lo aceptó en su escrito en oposición a la solicitud de sentencia sumaria presentada por el Banco, al exponer que *"existe controversia real sobre los renglones de ingresos que imposibilita a este Tribunal resolver la misma mediante una sentencia sumaria como solicita aquí el demandante".* (Véase pág. 8 del escrito de oposición.).

Por lo cual, concluimos y dictaminamos que es necesario que se celebre en el TPI una vista en los méritos, en la cual se desfile prueba sobre cada una de las partidas que el Banco reclama como exentas del pago de patentes, a los fines de determinar con certeza fáctica: (1) si tratan de obligaciones del Gobierno de Puerto Rico o del Gobierno de los Estados Unidos exentas por ley; (2) si el ingreso de las operaciones de las sucursales fuera de Puerto Rico provienen de intereses por financiamiento (préstamos) otorgados a clientes en los Estados Unidos, de

cargos por servicios en cuentas bancarias, préstamos y otros créditos de clientes de Estados Unidos, y/o de ingreso misceláneos derivados de esas operaciones, o si, por el contrario, como aduce el Municipio, dichos ingresos son atribuibles a la operación del Banco en Puerto Rico; y (3) para determinar si en efecto, como cuestión de hecho, el Banco satisfizo o no las correspondientes contribuciones de similar naturaleza a la patente en las otras jurisdicciones que mantuvo sucursales en los años aquí en controversia, por lo que de resultar ello correcto sería necesario otorgarle un crédito por dichos pagos. Ciertamente ante una controversia de hecho sobre cada uno de dichas partidas, procede que sean examinadas y adjudicadas como resultado de un juicio en su fondo.

No obstante todo lo anterior, nos parece necesario establecer que no estamos aquí prejuzgando los méritos de la deficiencia notificada por el Municipio, ni la corrección o no de los planteamientos del Banco. Ello corresponde al TPI luego de desfilada la prueba de las partes, de adjudicar hechos, y dirimir cuestiones de credibilidad.

**IV**

Por los fundamentos antes expuestos, revocamos la sentencia apelada y devolvemos el caso al TPI para que allí continúen los procedimientos conforme a lo determinado en esta sentencia.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones